# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**JULIE AMANDA TILTON,**

　　　　**Plaintiff,**

**v.**　　　　　　　　　　　　　　　　**Case No.  8:05-cv-692-T-30TGW**

**PLAYBOY ENTERTAINMENT GROUP,
INC., et. al,**

　　　　**Defendants.**

_____/

## ORDER
### and
### AMENDED NOTICE OF PRE-TRIAL CONFERENCE AND TRIAL

THIS CAUSE comes before the Court upon Defendants Deslin Inc. d/b/a Desert Inn Resort Motel, Irene Devlin and Dennis Devlin's (collectively, the **"Deslin Defendants"**) Motion for Summary Final Judgment (Dkt. 148), Plaintiff's Response in Opposition to the same (Dkt. 169), the Deslin Defendants' Reply to Plaintiff's Response (Dkt. 178), Defendants BV & BK Productions, LLLP (**"BV&BK"**) and Chad Ciani's (**"Ciani"**) Dispositive Motion for Summary Judgment and Memorandum of Law in Support (Dkt. 147), and Plaintiff's Response in Opposition to the same (Dkt. 168).  The Deslin Defendants, BV&BK, and Ciani shall collectively be referred to herein as **"Defendants."**

# FACTUAL BACKGROUND[1]

A.    *Plaintiff's Trip to Daytona.*

In March of 2001, Tilton traveled to Daytona Beach for her spring break from high school. At the time of the trip, Tilton was seventeen years old, ten months, and living on her own (apart from her parents[2]). For the duration of the trip, Tilton stayed in a hotel room at the Desert Inn Resort Motel (the **"Desert Inn"**) with three or four friends. On the first or second day of her trip, Tilton and her friends participated in a wet t-shirt contest at the Desert Inn, but only for a short period of time. A day or two later, Tilton and her friends participated in a second wet t-shirt contest, also at the Desert Inn.

Prior to entering the second wet t-shirt contest, Tilton consumed one alcoholic drink and a shot of liquor in her hotel room. In her Declaration dated July 7, 2003 (the **"2003 Declaration"**), Tilton testified that "reporters" and "sponsor people" convinced her and her friends to go up on stage and enter the second wet t-shirt contest. After one of the "sponsors," a man wearing "Elvis" sunglasses, provided Tilton and her underage friends with alcoholic beverages, the group reported backstage. While backstage, Tilton claims she gave

---

[1]The facts contained in this Order are undisputed unless otherwise noted herein. References to deposition transcripts will be in the format "Witness Name p. __". For witnesses with multiple depositions, references to deposition transcript will be in the format "Witness Name 1 p. __", Witness Name 2 p. __", etc. The parties have stipulated that discovery taken in the following cases is deemed to have occured in the instant case: *Pippen v. Playboy Entertainment Group, Inc.,* et al., Case No. 8:02-cv-2329-EAJ, *Badillo, et al., v. Playboy Entertainment Group, Inc.,* et al., Case No. 8:04-cv-591-JSM-TBM, and *Brietfeller, et al. v. Playboy Entertainment Group, Inc.,* et al., Case No. 8:05-cv-405-JSM-TGW. (See Dkt. 30 and Dkt. 68).

[2]Tilton's eighteenth birthday was May 26, 2001.

her name and age to the facilitators of the contest, who provided her with a cutoff t-shirt, tattoos, and additional alcoholic beverages. Id. at 4-5. After changing into their shirts, 10 to 15 women, including Tilton, walked on stage and waited for the contest to begin. The DJ began "getting the crowd[3] hyped up," and started playing "booty music"[4] while the contestants began to dance. Tilton testified that the deejays were "very nasty" and that "the language they were using was just enticing the girls to take their tops off more, [and] just [to] do anything out of the normal that would attract any guy's attention that was watching." (2003 Declaration at 6). To determine the winner, the emcee placed his hand above each contestant's head and awaited the crowd's response for that particular contestant. The three contestants with the loudest crowd response were considered the finalists and advanced to the final round, while the other contestants were eliminated. Tilton was among the first group to be eliminated.

At her initial deposition, Tilton testified that her participation in the contest was voluntary and that she was aware she was being videotaped. (Tilton 1 at 175). Furthermore, she estimated that there were 300 to 400 people in the crowd observing the contest and that one out of every ten people had a camera or video camera. (Tilton 2 p. 207). In addition to the wet t-shirt contest, Tilton also participated in a "banana sucking contest," a "muff eating

---

[3]The crowd included those persons standing on the pool deck, hotel balconies and the public beach and had full view of the stage on which the contest was taking place.

[4] "Booty music" also known as Miami bass, is a type of hip hop music that became popular in the 1980s and 1990s and was largely based in Miami and other places in Florida. The genre, which has a slightly higher dance tempo and occasional sexually explicit lyrical content, includes groups like 2 Live Crew. See http://en.wikipedia.org/wiki/Bass_music.

contest," and a "sexual positions" contest (all contests are collectively referred to herein as the **"Contests"**).

  B.  *The Deslin Defendants.*

  While there appears to be an issue of fact as to their relationship[5], David Barton (**"Barton"**) and his company, Goldrush Disc Jockeys, Inc. (**"Goldrush"**), were hired by Deslin, Inc.[6], to act as a deejay for the Contests and to film promotional videos for the Desert Inn. Barton and Goldrush[7] edited the raw footage obtained during the Contests, along with additional footage of the hotel, to produce a "Demo Commercial" DVD (hereinafter, the "Promotional Video"). The Deslin Defendants filed the Promotional Video with this Court on April 20, 2007, which was identified as Exhibit "A" to Christopher Huddleston's deposition (Dkt. #187).

  The Promotional Video contains footage of contestants participating in each of the Contests. In her Answers to Interrogatories, Nos. 1, 2, and 4, Tilton claims to be depicted on the Promotional Video for a total of five seconds. Upon reviewing the Promotional

---

[5]At issue is whether GoldRush was an agent of the Deslin Defendants in 2001 or an independent contractor. Devlin testified that GoldRush was hired to entertain the spring breakers on the hotel pool deck, and was at all times in control of the pool deck and the activities that occurred on the deck. However, Barton testified that GoldRush at no time had control over the pool deck or any activities that took place on the pool deck and those activities were dictated and controlled by the hotel.

[6]An issue of fact also exists as to whether the Devlins, in their individual capacity, engaged Barton and Goldrush.

[7]Barton and Chris Huddleston, an employee of Goldrush, each obtained footage for the promotional video.

Video, this Court was not able to identify Tilton among the participants.  According to Barton, the additional raw footage not used in the Promotional Video, which may have included images of Tilton, was thrown out.

Tilton's participation in the Contests was also taped by Paul Prewitt (**"Prewitt"**), who was not affiliated with the Deslin Defendants.  For purposes of their motion, the Deslin Defendants do not dispute Tilton's allegations that Prewitt transferred his rights to the other co-defendants in this action, or that the Prewitt's footage was ultimately incorporated into commercial video products.  However, there is no evidence in the record that Barton or Gold Rush had a business relationship with or sold footage to any other defendant in this action other than the Deslin Defendants.  Furthermore, there is no evidence in the record of a business or agency relationship between Prewitt and the Deslin Defendants.

B.      *BV & BK and Chad Ciani.*

BV & BK LLLP (**"BV&BK"**), an Internet website company, was started by Chad Ciani (**"Ciani"**) and his partner, Jason Maskel, in 2002 (Dkt. 272, Ex. 2 at 6,8).  Prior to the formation of BV&BK, Ciani operated the website, *bikinivoyer.com*, on which he posted photographs of women he had taken during his trips to Daytona Beach.  BV&BK owns *bikinivoyer.com* as well as many other websites, and provides subscribers access to pictures and video images documenting various public events such as spring break activities, wet t-shirt contests, bikini contests and other events.  BV&BK does not, however, sell the footage on videos or DVDs; all images must be viewed on its website(s).

In 2001, Ciani was in Daytona Beach for spring break.  While on the beach near Desert Inn, he heard an announcement over a loud speaker advertising the wet t-shirt contest. Ciani decided to go to the hotel to watch the contest, and on arriving at the hotel, positioned himself on the second deck of the Desert Inn.  The second deck was approximately 20 feet above the stage and 50 to 60 feet away from where the wet t-shirt contest was to take place. From this location, Ciani was able to view the wet t-shirt contest and take photographs.  At no time did he speak with any of the contestants, including Tilton.

In April 2001, Ciani posted on his website the photographs he took from spring break 2001, including the wet t-shirt contests.  He also posted video footage he obtained from Defendant Michael Weitz of the various events taking place at the Desert Inn during spring break 2001.  Tilton's images were displayed on the website.  As a result, Tilton filed this lawsuit.

## DISCUSSION

## I.    SUMMARY JUDGMENT STANDARD

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986)(emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. Id. Throughout this analysis, the judge must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in her favor. Id. at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. The evidence must be significantly probative to support the claims. Anderson, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir.1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248; Hoffman v. Allied Corp., 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989).

## II.   **LEGAL ANALYSIS**

A.      *Plaintiff's Claims against BV&BK and Ciani.*

Tilton alleges in her Amended Complaint that BV&BK and Ciani violated 18 U.S.C.

§ §§§2251(a), 2252(a) and 2252A(a) (Counts 16-18[8]).   All other claims against these

defendants have been dismissed.

Section 2251(a) of United States Code 18, entitled *Sexual Exploitation of Children*,

reads in relevant part:

> Any person who employs, uses, persuades, induces, entices, or
> coerces any minor to engage in, . . . any sexually explicit
> conduct for the purpose of producing any visual depiction of
> such conduct, shall be punished . . . if such person knows or has
> reason to know that such visual depiction will be transported in
> interstate or foreign commerce or mailed . . . or if such visual
> depiction has actually been transported in interstate or foreign
> commerce or mailed.

See 18 U.S.C. § § 2251(a).  In Count 16 of the Amended Complaint, Tilton alleges that

BV&BK and Ciani violated 18 U.S.C. § § 2251(a) when they, and their agents, persuaded,

induced and enticed Tilton to participate in the contests and to engage in sexually explicit

conduct by orally encouraging Tilton.  (Dkt. 41).  In order to establish liability, Tilton had

to present evidence that BV&BK and Ciani (1) employed, used, persuaded Tilton, (2) to

engage in sexually explicit conduct, (3) for the purpose of producing any visual depiction of

---

[8]Counts 16 to 18 are also against Defendants Michael Weitz and Jason Maskell.  However, neither Defendant has filed a Motion for Summary Judgment.

the conduct.  See id.  In their Motion, BV&BK and Ciani argue that summary judgment is

appropriate because there is no record evidence to support Tilton's allegations.  This Court

agrees.

Tilton has presented no evidence that BV&BK or Ciani induced her in any way.[9]

First, Tilton has admitted that her decision to participate in the contest was voluntary (Tilton

1 at 175).  In fact, Ciani testified that he never talked to any of the contestants.  While Ciani

did testify that he participated in the yelling and cheering of the crowd (Ciani February 22,

2006 depo. at 105), he stated that he never yelled anything to encourage the contestants to

engage in any type of behavior.  Id. at 105.  Tilton has no evidence to the contrary.  She has

presented no evidence she had any conversations with Ciani prior to entering the contest, or

while she was participating in the contest.  Ciani's behavior is insufficient to trigger liability

under the statute.  Accordingly, summary judgment as to Count 16 is **granted**.

In Counts 17 and 18 of the Amended Complaint, Plaintiff alleges that BV&BK and

Ciani violated 18 U.S.C. § §§ 2252(a)[10] and 2252A(a).[11]  In order to prevail on these claims,

Plaintiff must establish that BV&BK and Ciani transported, received, distributed and

---

[9]Tilton also argues that BV&BK and Ciani conspired with GoldRush employees to induce their participation in the wet t-shirt contest.  However, Tilton has provided no substantive evidence to support this argument.  The references and citations to David Barton's deposition testimony as evidence of a conspiracy are not indicia of the same.

[10]Section 2252(a) makes it illegal for any person to knowingly transport or ship, receive, distribute or reproduce for distribution any visual depiction of a minor engaging in sexually explicit conduct. See 18 U.S.C. § 2252(a).

[11]Section 2252A(a) makes it illegal for any person to knowingly mail, transport, receive, distribute or reproduce for distribution any child pornography.  See 18 U.S.C. § 2252A(a).

reproduced for distribution a visual depiction knowing, at the time of the transport, receipt distribution or reproduction, that said depiction contained sexually explicit images of minors.[12]

Tilton argues that Defendants had actual knowledge of her age at the time they were served with the Complaint in Badillo v. Playboy Entertainment Group, Inc., et al, Case. No: 8:04-cv-591-T-30TBM, i.e. March 31, 2004.[13] Defendants do not contest this fact, and state that three to four months after being served, Ciani removed a portion of the spring break 2001 content from the website (Ciani February 22, 2006 depo. at 49-50). The remaining content was removed some time during the following year. Three months would be a reasonable time to identify and remove pictures of minors, but the record does not reveal which pictures of Tilton were removed or when. Id. at 50. While this Court considers the removal of the images three to four months after receiving the Complaint was reasonable, Ciani has failed to identify what specific images were removed during that period. Furthermore, Tilton has presented evidence that her images and the images of other known minors were depicted on the www.bikinivoyeur.com website as late as 2005[14]. These images were allegedly moved from their original location to another section of the website. Thus,

---

[12] The scienter requirement applies to both the transport, receipt, production, or distribution of the sexually explicit material and the age of the performers. See United States v. X-Citement Video, Inc.,et al, 513 U.S. 64, 78 (1994).

[13]Tilton also argues that Defendants should have known Tilton was underage because her youth should have been obvious based on her appearance. However, no reasonable juror could conclude that she was obviously a minor.

[14]See Affidavit of Richard S. Shankman, Esq., dated February 28, 2007 (Dkt. 168-2).

an issue of fact exists as to whether or not Tilton's images were timely removed from the *www.bikinivoyeur.com*. Because of this issue of fact, the Court cannot grant summary judgment as to these claims.

      B.    *Plaintiff's Claims Against the Deslin Defendants.*

In Count I of the Amended Complaint, Tilton alleges that the Deslin Defendants violated 18 U.S.C. § § 2251(a) when they, through their agent GoldRush, persuaded, induced and enticed Tilton to participate in the contests and to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct. (Dkt. #41). In order to establish liability, Tilton must present evidence that the Deslin Defendants (1) employed, used, persuaded Tilton, (2) to engage in sexually explicit conduct, (3) for the purpose of producing any visual depiction of the conduct. See 18 U.S.C. § § 2251(a). In their Motion, the Deslin Defendants argue that summary judgment is appropriate because there is no record evidence to support Tilton's allegations. While doubt may exist whether Tilton will prevail on the merits of this claim, she has presented issues of fact, specifically with regard to the issue of inducement,[15] that, at this time, preclude granting summary judgment in the Deslin Defendants' favor. Those issues of fact are as follows:

      1.    Relationship of the Deslin Defendants to Barton and Goldrush.

Dennis Devlin testified that GoldRush was hired by the hotel as an independent contractor to entertain the spring breakers on the hotel pool deck, and was at all times in

---

[15] The term "inducement", or any form of the same, will be used by this Court to include the statutory terms, "entice", "persuade" and "induce."

control of the pool deck and the activities that occurred on the deck.   However, Barton testified that he was an "employee" of the hotel, and that neither he nor GoldRush had control over the pool deck or any activities that took place on it.  Whether Goldrush was an independent contractor or agent of the Deslin Defendants is a determination best left for the jury.

       2.       Inducement to participate in the contest.

Tilton has testified that her decision to participate in the Contests was voluntary. However, she has also presented testimony that she was enticed, persuaded or induced to participate based on other happenings.  For example, Tilton testified that she was encouraged to go up on stage by the "sponsors" and emcees of the contests.  (2003 Declaration at 1). Whether Tilton's decision to participate in the contest was of her own volition or a result of persuasion from Defendant is a determination best left for a jury.

       3.       Inducement to engage in sexually explicit behavior.

Assuming a jury finds that the Deslin Defendants induced Tilton to participate in the wet t-shirt contest, liability cannot be found unless it is determined that the Deslin Defendants induced Tilton to engage in sexually explicit behavior.  The Court has reviewed the Desert Inn Promotional Video (the **"Promotional Video"**) identified as DVD, Exhibit "A" to Christopher Huddleston's Deposition (Dkt. 186, 187).  The Promotional Video depicts images of male and female contestants engaging in the Contests.  While the Promotional Video does not depict images of Plaintiff participating in the Contests, there is evidence in the record sufficient to survive summary judgment that Plaintiff participated in the Contests.

In order for Plaintiff to establish the Deslin Defendants' liability under 18 U.S.C. § §2251(a), she must show that the Defendants employed, used, persuaded, induced, or enticed her "to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . ."  The statute does not require that Plaintiff's image actually appear in the Promotional Video[16].  Rather, Plaintiff can establish a violation of 18 U.S.C. § §2251(a) by showing that Defendants (or their agents) induced her to engage in sexually explicit conduct in connection with the production of the Promotional Video (or other visual depiction).  As discussed below, the parties are requested to address the issue of whether Tilton and the other contestants engaged in "sexually explicit conduct," as defined under the statute.

C.      *Definition of "Simulated" Sexual Intercourse.*

Each of Plaintiff's remaining causes of action[17] requires Plaintiff to establish that she engaged in, or was induced to engage in, "sexually explicit conduct," as defined in 18 U.S.C. § §2256(2)(a), which provides in pertinent part:

> Except as provided in subparagraph (B), "sexually explicit conduct" means actual or simulated--
>
> (i)   sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;

---

[16]The court notes that Ciani and BV&BK did not participate in the production or distribution of the Promotional Video.

[17]Including Count I against the Deslin Defendants and Counts 16-18 against BV&BK and Ciani.

(ii) bestiality;

(iii) masturbation;

(iv) sadistic or masochistic abuse; or

(v) lascivious exhibition of the genitals or pubic area of any person.

At issue before the Court is whether Plaintiff's participation in the Contests constitutes "sexually explicit conduct" under 18 U.S.C. § §2256(2)(a)[18]. Specifically, the Court must determine whether the Contest participants engaged in "simulated" sexual intercourse, as defined above. The Merriam-Webster Online Dictionary defines "simulate" as a verb meaning "to give or assume the appearance or effect of, often with the intent to deceive," and "simulated" as an adjective meaning "made to look genuine." MERRIAM-WEBSTER ONLINE DICTIONARY, http://www.m-w.com/dictionary (last visited May 14, 1007). Moreover, in Giovani Carandola, Ltd. v. Fox, 470 F.3d 1074, 1080 (4th Cir. 2006), the court, in construing a state statute prohibiting simulated sexual acts, concluded that "[A]n act only constitutes simulated sexual intercourse or simulated masturbation if it creates the realistic impression of an *actual* sex act." This issue was not raised by the parties in their pleadings. Therefore, the parties are requested address this additional issue.

D.    *Conclusion.*

Before ruling on the Defendants Motions for Summary Judgment as to the remaining claims, the Court must first determine whether the Plaintiff and the other contestants engaged

---

[18]The definition of "sexually explicit conduct" is relevant to a determination of liability under 18 U.S.C. §§§ 2251(a), 2252(a) and 2252A(a).

in "sexually explicit conduct" as discussed above.  If the Court determines that Plaintiff did not engage in "sexually explicit conduct," then summary judgement is appropriate in favor of Defendants on all remaining claims.  Alternatively, if the Court determines that the conduct at issue constitutes "sexually explicit conduct," a jury should determine (i) whether or not BV&BK and Ciani timely removed Tilton's images from the *www.bikinivoyeur.com* website, (ii) whether an agency relationship existed between each of the Deslin Defendants and Barton/Goldrush, and (iii) whether Barton/Goldrush induced Tilton to participate in the contests and engage in sexually explicit conduct for the purpose of producing the Promotional Video.

It is therefore ORDERED AND ADJUDGED that:

1.      Each party shall have twenty (20) days from the date hereof to brief the Court on whether Plaintiff's participation in the contests constituted "simulated sexually intercourse" under 18 U.S.C. § §2256(2)(a).  The parties' briefs shall not exceed 15 pages in length.

2.      Plaintiff shall specifically identify for the Court all instances in the record which visually depict Plaintiff participating in the Contests.  To the extent such visual depictions are included on DVD's filed with the Court (Dkt. 115), Plaintiff shall identify by frame or time counter each and every instance in which her images appear.

3.      Defendants BV & BK Productions, LLLP and Chad Ciani's Dispositive Motion for Summary Judgment and Memorandum of Law in Support (Dkt. 147) is **GRANTED in part** as set forth herein.  The Court will defer ruling on the remainder of the

Motion for Summary Judgment (Dkt. 147) pending its review of the briefs filed in accordance with this Order.

4.    The Court will defer ruling on the Defendants Deslin Inc. d/b/a Desert Inn Resort Motel, Irene Devlin and Dennis Devlin's Motion for Summary Final Judgment (Dkt. 148) pending its review of the briefs filed in accordance with this Order.

5.    The Pretrial Conference scheduled for June 7, 2007, at 8:45 a.m. is CANCELLED.

6.    The Pretrial Conference is rescheduled for **TUESDAY, SEPTEMBER 4, 2007, AT 8:45 A.M.**, before the Honorable James S. Moody, Jr., United States Courthouse, 801 North Florida Avenue, Courtroom 13A, Tampa, Florida 33602.

7.    This case is set for **JURY TRIAL** in Courtroom 13A of the United States Courthouse, 801 North Florida Avenue, Tampa, Florida, during the **OCTOBER 1, 2007,** trial term before the Honorable James S. Moody, Jr.

**DONE** and **ORDERED** in Tampa, Florida on May 24, 2007.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2005\05-cv-692. order re simulated.frm