**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**JULIE AMANDA TILTON,**

**Plaintiff,**

**v.** **Case No. 8:05-cv-692-T-30TGW**

**DESLIN HOTELS, INC., et. al.,**

**Defendants.**
**_______________________________________/**

## ORDER

THIS CAUSE comes before the Court upon Defendants BV & BK Productions, LLP (**"BVBK"**) and Chad Ciani's (together, **"Defendants"**) Renewed Dispositive Motion for Summary Judgment (Dkt. 692), Plaintiff Julie Amanda Tilton's Memorandum in opposition to the same (Dkt. 240), and Defendants' Motion for Leave to Clarify Record Concerning Dispositive Motions for Summary Judgment and this Court's Order of May 24, 2007 (Dkt. 243). The Court, having considered the motions and memoranda, and after hearing oral argument of the parties, determines that Defendants' renewed motion for summary judgment should be granted.

## **Factual Background**[1]

Plaintiff's claims in this case arise out of activities taking place in March of 2001 at the Desert Inn Resort Motel (the **"Desert Inn"** ) in Daytona Beach, Florida. Plaintiff stayed at the Desert Inn during her spring break from high school. During the course of her stay, Plaintiff participated in a number of spring break activities and contests taking place on the pool deck of the Desert Inn. These activities included a "wet t-shirt contest," a "banana sucking contest," a "muffin eating contest," and a "sexual positions contest" (collectively, the **"Contests"**). At the time Plaintiff participated in the Contests, she was seventeen years and ten months old, and was living on her own (apart from her parents).[2]

The Contests took place on a stage located on the pool deck of the Desert Inn. Plaintiff estimates that a crowd of 300 to 400 people observed the wet t-shirt contest from the pool deck of the Desert Inn. Plaintiff also estimates that one out of every ten people had a camera or video camera. While participating in the wet t-shirt contest, Plaintiff was aware that she and the other participants were being photographed and videotaped by members of the crowd.[3]

---

[1]The summary of the facts and legal issues in this case contained Court's Orders of May 24, 2007 (Dkt. 205), and July 30, 2007 (Dkt. 215), are incorporated herein by this reference.

[2]Plaintiff's eighteenth birthday was May 26, 2001.

[3]During her deposition, Plaintiff claimed to have no recollection of her participation in the other Contests besides the wet t-shirt contest. However, Plaintiff has since produced evidence that she participated in the other Contest immediately prior to participating in the wet t-shirt contest.

Defendant Chad Ciani (**"Ciani"**) was among the members of the crowd. Ciani was positioned on the second deck of the Desert Inn, approximately 20 feet above and 50 to 60 feet away from the stage. Ciani took still photographs of Plaintiff and the other participants in the Contests, and later obtained video footage of the Contests from Defendant Michael Weitz. Ciani claims that at the time of the Contests, he was not aware that any of the participants were minors.

In April of 2001, Ciani posted photographs and video footage of the Contests on *www.bikinivoyeur.com,* a website he operated. In 2002, Ciani partnered with Jason Maskel to form BVBK, an internet website company which now owns and operates a number of websites, including *www.bikinivoyeur.com*. BVBK sells subscriptions to its websites but does not sell videos or DVDs. Subscribers are granted access to content contained on the websites, including digital images and video clips. Subscribers to the *www.bikinivoyeur.com* website were granted access to digital images and videos of Plaintiff participating in the Contests.

**Procedural Background**

On February 1, 2007, Defendants moved for summary judgment on all of Plaintiff's claims (Dkt. 147). On May 24, 2007, the Court deferred ruling on the motion for summary judgment as to Counts 17 and 18 of Plaintiff's Amended Complaint (alleged violations of 18 U.S.C. §§ 2252(a) and 2252(A)(a)) pending additional argument by the parties as to the definition of "simulated sexual intercourse" under 18 U.S.C. § 2256(2)(a).

In the May 24, 2007 Order, the Court considered whether Ciani timely removed images of the Plaintiff from the website upon receiving notice that she was a minor.[4] Plaintiff argued that Defendants had actual knowledge of her age at the time he was served with the Complaint in the companion case *Badillo v. Playboy Entertainment Group, Inc., et al.*, Case No. 8:04-cv-591-T-30-TBM, i.e. March 31, 2004. During his deposition taken in companion case *Brietfeller, et al. v. Playboy Entertainment Group, Inc., et al.,* Case No. 8:05-cv-405-JSM-TGW, Ciani claimed he removed the Desert Inn content from 2001 three to four months after being served with the *Badillo* complaint. While the Court considered removal of the images within three to four months to be a reasonable period of time, Plaintiff presented evidence that her images were depicted on *www.bikinivoyeur.com* as late as 2005. Plaintiff's attorney, Richard S. Shankman, filed an affidavit claiming that Plaintiff's pictures were not removed but were instead moved to another location on the website. Relying on Shankman's affidavit, the Court held that Plaintiff had raised a material issue of fact as to whether Defendants timely removed her images from their website upon receiving notice that she was a minor. However, the Court deferred ruling on Counts 17 and 18 pending additional briefing by the parties to address whether those images were "sexually explicit" within the purview of 18 U.S.C. § 2256(2)(a).

[4] From visual observation, neither Ciani nor any juror reviewing Plaintiff's images could reasonably conclude that she was a minor at the time she participated in the Contests.

On July 30, 2007, the Court entered an order denying Defendants' motion for summary judgment as to Counts 17 and 18. The Court held that a reasonable jury could conclude that a number of images depicted on *www.bikinivoyeur.com* were a lascivious exhibition of the genitals, and thus "sexually explicit" in nature as defined under 18 U.S.C. § 2256(2)(a). Both this conclusion and the material issue of fact regarding removal of Plaintiff's images precluded the entry of summary judgment in favor of Defendants.

On July 21, 2007, discovery was re-opened for the limited purpose of allowing Defendants to take Shankman's deposition. Following the deposition and with leave of the Court, Defendants renewed their motion for summary judgment. Defendants argue that during his deposition, Shankman could not identify which photos of Plaintiff he observed in 2005. Because he could not identify the pictures, Defendants asserted that Shankman's affidavit was self-serving, unreliable, and mere speculation as to whether the pictures allegedly remaining on the website were sexually explicit. In response, Plaintiff argued that (i) Ciani's deposition testimony regarding his removal of the images was not precise[5], (ii) the 37 Xerox copies shown to Shankman during his deposition did not represent all the images that appeared on Defendants' website, (iii) the images provided did not have website framing or utilize a wave back engine to help Shankman place the requisite incarnations of the website in time, (iv) Shankman claimed to have confirmed that every image of Plaintiff still appeared on the website after they were allegedly removed from the 2001 section of the

[5]Plaintiff argues that Ciani's use of the terms "maybe" or "about" regarding the time frame in which he removed the images (July or August of 2004) was not specific, and that a jury could reasonably conclude the images were removed more than four months after Defendants were served.

website, and (v) an affidavit of John Dabrowski, a video production specialist hired by Shankman to assist in his investigation, corroborated Shankman's testimony that Plaintiff's images were moved to another area of the website.

Upon review of the renewed motion and response, the Court set the motion for oral argument on October 4, 2007. Plaintiff was directed to produce copies of all images she claims were depicted on Defendants' website after August of 2004[6] and copies of all correspondence, if any, she or her counsel used to (i) notify Defendants that pictures of her as a minor were being depicted on Defendants' website, (ii) request that Defendants remove her pictures from their website(s), and/or (iii) identify Plaintiff so Defendants could remove her images from their website(s).

On October 3, 2007, Defendants filed their Motion for Leave to Clarify Record Concerning Dispositive Motions for Summary Judgment and This Court's Order of May 24, 2007 (Dkt. 243), supported by an affidavit of Ciani. The motion and supporting affidavit claim that Ciani was not aware of Plaintiff's minority status, physical appearance, or depiction on the website until April 11, 2005, when Plaintiff filed her initial Complaint in the instant action. The images Ciani claimed to have removed within three to four months following the filing of the *Badillo* complaint were images of other plaintiffs in actions unrelated to Plaintiff. As the *Badillo* complaint did not name or reference Plaintiff, Ciani claims he was unaware of her likeness or minority status until he was served in the instant

---

[6]August 2004 was approximately four months after Ciani was served with the *Badillo* complaint.

action. Further, Ciani claims to have removed all images of Plaintiff (and all images of activities taking place at the Desert Inn) within a few weeks of his February 8, 2005 deposition, a month or two before Plaintiff initiated this action.[7] During Ciani's deposition taken in the *Brietfeller* case on February 22, 2006, he testified as follows when asked when he removed all of the Desert Inn content from the website:

> CIANI: After the last deposition[8], maybe the month or so after, or could have been weeks, I'm not exactly sure. But not too much – not too far after; about a year ago, it would be safe to say.
>
> The first content from 2001, about three or four months after I first got served with the lawsuit, I removed the 2001 content, which was probably close to two years ago now. Then the remainder of the Desert Inn content about a year ago.

Ciani Feb. 22, 2006 Deposition, pages 49-50.

During the October 4, 2007 hearing on the renewed motion for summary judgment, the Court inquired as to whether Plaintiff or her counsel notified Defendants of Plaintiffs' minority status or likeness prior to filing this lawsuit so that Defendants could know Plaintiff was a minor and remove her images from the website. When no such evidence was produced, the Court instructed Plaintiffs' counsel that Plaintiff had thirty (30) days to

---

[7]Ciani claims that he was prompted to remove all remaining Desert Inn images based on counsel's questions at his February 8, 2005 deposition. Ciani claims the questions aroused his suspicion that other minors may have been depicted on the *www.bikinivoyeur.com* website.

[8]The "last deposition" was taken on February 8, 2005.

produce such evidence.[9] On October 12, 2007, Plaintiff filed a notice to the Court claiming that "her counsel has made a diligent search for evidence that BV&BK Productions, LLP or Chad Ciani was informed of her age and shown her photograph so they could remove her images from their website, and that counsel cannot locate any such evidence." (Dkt. 246).

## Discussion

### I. Summary Judgment Standard

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. Id. Throughout this analysis, the judge must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in her favor. Id. at 255.

---

[9] During the hearing, Plaintiff's counsel referenced a Declaration made by Plaintiff on July 7, 2003, in the companion case *Pippin v. Playboy Entertainment Group, et al. v. Playboy Entertainment Group, et al.*, Case No. 8:02-cv-2329-T030-EAJ. Counsel argued that the Declaration, which described Plaintiff's participation in the wet t-shirt contest, put Defendants on notice of her minority status. However, the Declaration made no reference to Defendants, the fact that Plaintiff's images were depicted on their website, or describe her likeness so that she could be identified among the participants.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. The evidence must be significantly probative to support the claims. Anderson, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990). “[I]f factual issues are present, the Court must deny the motion and proceed to trial." Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir.1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248; Hoffman v. Allied Corp., 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989).

## II. Legal Analysis

In Counts 17 and 18 of the Amended Complaint, Plaintiff alleges that Defendants violated 18 U.S.C. §§ 2252(a)[10] and 2252A(a).[11] In order to prevail on these claims, Plaintiff must establish that Defendants transported, received, distributed, or reproduced for distribution a visual depiction knowing, at the time of the transport, receipt, distribution or reproduction, that said depiction contained images of a minor engaging in sexually explicit conduct.[12] Pursuant to 18 U.S.C. § 2256(2)(A), "sexually explicit conduct"means actual or simulated:

> (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;
>
> (ii) bestiality;
>
> (iii) masturbation;
>
> (iv) sadistic or masochistic abuse; or
>
> (v) lascivious exhibition of the genitals or pubic area of any person.

Pursuant to § 2256(8):

> "child pornography" means any visual depiction, including any photograph, film, video, picture, or computer or computer-

---

[10]Section 2252(a) makes it illegal for any person to knowingly transport or ship, receive, distribute or reproduce for distribution any visual depiction of a minor engaging in sexually explicit conduct. See 18 U.S.C. § 2252(a).

[11]Section 2252A(a) makes it illegal for any person to knowingly mail, transport, receive, distribute, reproduce for distribution, or possess any child pornography. See 18 U.S.C. § 2252A(a).

[12] The scienter requirement applies to both the transport, receipt, production, or distribution of the sexually explicit material and the age of the performers. See United States v. X-Citement Video, Inc.,et al, 513 U.S. 64, 78 (1994).

> generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where--
>
> (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;
>
> (B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct[13]; or
>
> (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

In United States v. X-Citement Video, Inc., 513 U.S. 64, 78 (1994), the Supreme Court held that the term "knowingly" in § 2252 extends both to the sexually explicit nature of the material and to the age of the performer. The Eleventh Circuit has acknowledged that the same scienter requirement in § 2252A extends to the acquisition or distribution of the subject material, the sexually explicit nature of the material, and the age of the performer. See U.S. v. Acheson, 195 F.3d 645, 653 (11th Cir. 1999), *overruled on other grounds by* Free Speech Coalition, 535 U.S. at 285.

In the instant case, Plaintiff has admitted that she cannot produce evidence that Defendants were informed of her age before filing this lawsuit. Further, Plaintiff acknowledges that until this suit was filed, Defendants did not know what Plaintiff looked like and could not have removed her picture even if they had known her name and age. It is Plaintiff's position that the mere appearance of her image on Defendants' website

---

[13]In Ashcroft v. Free Speech Coalition, 535 U.S. 234, 258 (2002), the Supreme Court held §§ 2256(8)(B) and (8)(D) to be overbroad and unconstitutional. Section (8)(D) was repealed on April 30, 2003, and thus is not referenced herein.

establishes Defendants' violation of the statutes at issue.

During the October 4, 2007 hearing, Plaintiff's counsel also argued that Defendants' removal of the subject images could not absolve them of liability under § 2252(a). Section 2252(c)(2)(A) provides an affirmative defense to a charge of violating § 2252(a)(4) if the defendant cooperated with law enforcement and "took reasonable steps to destroy" the subject visual depiction. Section 2252(a)(4) relates only to possession and not to the creation, reproduction, or distribution of images of a minor engaging in sexually explicit conduct. Because the statutory affirmative defense relates only to possession, Plaintiff contends that Defendants' removal of her images could not absolve them of liability for violating the statute.[14]

Plaintiff's positions are contrary to the Supreme Court's holding in X-Citement Video and the Eleventh Circuit's acknowledgment in Acheson. Plaintiff admits that Defendants were not informed of her age or likeness prior to her filing this lawsuit. And, such knowledge cannot be imputed to the Defendants in this case. The pictures in question do not depict anyone with the obvious appearance of a minor. The participants are physically mature and no juror could reasonably conclude from observation of the pictures themselves that any of the participants were minors. Without knowledge of Plaintiff's age and likeness, Defendants could not have "knowingly" transported, received, distributed, reproduced,

[14]Plaintiff also argued at the hearing that Defendants violated 18 U.S.C. § 2257 by not adhering to the record keeping requirements referenced therein. However, Plaintiff's Amended Complaint does not allege a violation of this statute. Further, pursuant 18 U.S.C. § 2255, no civil remedy is available for a violation of this statute.

created, or possessed visual depictions of a minor engaging in sexually explicit conduct. Therefore, there can be no liability under the statutes. Further, Plaintiff has not produced evidence that at the time the lawsuit was filed, or any time thereafter, her images remained on Defendants' website.[15] Accordingly, the Court concludes that summary judgment is appropriate in favor of Defendants as to Counts 17 and 18 of Plaintiff's Amended Complaint.

It is therefore ORDERED AND ADJUDGED that:

1. Defendants' Motion for Leave to Clarify Record Concerning Dispositive Motions for Summary Judgment and this Court's Order of May 24, 2007 (Dkt. 243) is **GRANTED**.

2. Defendants' Renewed Dispositive Motion for Summary Judgment (Dkt. 230) is **GRANTED**.

3. The Clerk is directed to enter **Partial Final Summary Judgment** against Plaintiff and in favor of Defendants BV & BK Productions, LLP and Chad Ciani on Counts 17 and 18 of Plaintiff's Amended Complaint.

4. This Order disposes of all remaining issues in this case.

5. All pending motions are denied as moot.

---

[15]In his affidavit and during his deposition, Shankman claimed to have discovered images of Plaintiff on the *www.bikinivoyeur.com* website sometime in 2005. Shankman did not specify when in 2005 he discovered these images. Ciani claims he removed all pictures from the website within a few weeks of his February 8, 2005 deposition. Shankman has not claimed that the images remained on the website as of April 11, 2005 (when Plaintiff filed her complaint in this action), or anytime thereafter. Therefore, Shankman's affidavit does not refute the testimony of Ciani that all pictures of Desert Inn activities were removed (which would include those of Plaintiff even though Ciani did not know who she was) before this lawsuit was filed.

6. The Clerk is directed to close this file.

**DONE** and **ORDERED** in Tampa, Florida on October 19, 2007.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2005\05-cv-692.bvbk renewed msj.frm